## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

MARTHA P. CARBONARO, JAMESON D.
STORM, on behalf of themselves and all others
similarly situated,

Plaintiffs,

v.

ALLURA USA LLC, PLYCEM USA LLC
D/B/A ALLURA, PLYCEM USA, INC.,
ELEMENTIA USA, INC., ELEMENTIA, S.A.B.
DE C.V.,

Defendants.

CASE NO.: 3:19-cv-29

**CLASS ACTION COMPLAINT**
(JURY TRIAL DEMANDED)

Plaintiffs Martha P. Carbonaro and Jameson D. Storm, on behalf of herself and others similarly situated ("Class Members"), by and through their undersigned counsel file this Class Action Complaint as to the above-captioned matter, and in support hereof states and avers as follows:

### NATURE OF ACTION

1.       This is a consumer class action against Defendants, Allura USA LLC, Plycem USA LLC d/b/a Allura, Plycem USA, Inc., Elementia USA, Inc. and Elementia, S.A. De C.V. (hereinafter referred to as "Defendants") on behalf of all persons and entities who own homes, residences or other structures physically located in North Carolina, on which Defendants' fiber cement exterior siding is or was installed.

2.       Defendants' Fiber Cement Siding is hereinafter referred to as "the Siding."

3.       As discussed herein, the Siding on Plaintiffs' and Class Member's homes suffers from an inherent defect resulting in the Siding cracking, chipping, flaking, peeling or splitting.

4.      When properly manufactured and installed on homes, the Siding meets all applicable standards for weather resistance and performs adequately.

5.      However, as a result of the defect in the Siding, Plaintiffs' and Class Members' have incurred and will incur thousands of dollars in damages to replace the Siding as well as due to water and moisture intrusion issues since the Siding does not perform adequately.

## THE PARTIES

6.      Plaintiff Martha P. Carbonaro is a citizen and resident of Union Country, residing at 2604 White Pines Court, Monroe, North Carolina.

7.      Plaintiff Jameson D. Storm is a citizen and resident of Mecklenburg Country, residing at 15813 Country Lake, Pineville, North Carolina.

8.      Defendant Allura USA LLC is a subsidiary of Plycem USA LLC, and Plycem USA, Inc., with a principal place of business in the State of Texas, and at all times relevant herein, Allura USA LLC transacted and conducted business in North Carolina.

9.      Specifically, Allura USA LLC manufactured, advertised, and sold defective fiber cement siding that was installed on Plaintiffs' homes and those of hundreds and potentially thousands of Class Members in North Carolina and the United States.

10.      Defendant Plycem USA LLC d/b/a Allura was and is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business in the State of Texas, and all times relevant herein, Plycem USA LLC d/b/a Allura transacted and conducted business in North Carolina.

11.      Plycem USA LLC d/b/a Allura manufactured, advertised, and sold defective fiber cement siding that was installed on Plaintiffs' homes and those of hundreds if not thousands of Class Members in North Carolina and the United States.

12.     Defendant Plycem USA Inc. was and is a corporation organized and existing under the laws of the State of Georgia, with a principal place of business in the State of Texas and all times relevant herein, Plycem USA Inc. transacted and conducted business in North Carolina.

13.     Plycem USA Inc. manufactured, advertised, and sold defective fiber cement siding that was installed on Plaintiffs' homes and those of thousands of Class Members in North Carolina and the United States.

14.     Defendant Elementia USA, Inc., is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business in the State of Texas, and all times relevant herein, Elementia USA, Inc. transacted and conducted business in North Carolina.

15.     Elementia USA, Inc.  manufactured, advertised, and sold defective fiber cement siding that was installed on Plaintiffs' homes and those of thousands of Class Members in North Carolina and the United States.

16.     Defendant Elementia, S.A.B. De C.V. was and is a corporation organized and existing under the laws of Mexico and at all times relevant herein, Elementia, S.A.B. De C.V. conducts and is engaged in business in the State of North Carolina.

17.     Elementia, S.A.B. De C.V. manufactured, advertised, and sold defective fiber cement siding that was installed on Plaintiffs' homes and those of thousands of Class Members in North Carolina and the United States.

18.     At all times relevant herein, Elementia, S.A. De C.V., Elementia USA, Inc., Plycem USA LLC, Plycem USA Inc., and Allura USA LLC jointly transacted and conducted business in North Carolina.

19.     The Defendants are the agents and/or alter egos of each other, and the corporate

3

interests of these Defendants were amalgamated so that they in effect operated as one and the same entity.

20.    Defendants used, commingled, and combined their resources to design, develop, manufacture, market, and sell the fiber cement siding at issue.

21.    At all times relevant herein, the Defendants were actual and/or de facto joint ventures in the design, development, manufacture, marketing, and sales of the fiber cement siding at issue.

## JURISDICTION AND VENUE

22.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(d)(2) and the Class Action Fairness Act, in that (i) there is complete diversity, (ii) the amount in controversy exceeds $5,000,000.00 exclusive of interests and costs, and (iii) there are 100 or more members of the proposed Plaintiff Class.

23.    Venue is proper in this District, pursuant to 28 U.S.C. §1391, because Plaintiff resides in this Judicial District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this Judicial District.

24.    In addition, Defendants do business and/or transact business in this Judicial District, and therefore, are subject to personal jurisdiction in this Judicial District and reside here for venue purposes.

## FACTUAL ALLEGATIONS

25.    Defendants hold themselves out to both the construction industry and the public at large as being providers of superior, quality, and durable products, including the fiber cement siding that is the subject of this litigation.

26.    At all times relevant herein, Defendants were engaged in the design,

4

manufacturing, marketing, sale, supply and delivery of the fiber cement siding in the State of North Carolina.

27.     At all times relevant herein, Defendants designed, manufactured, marketed, sold, supplied and distributed the Siding.

28.     Upon information and belief, Defendants used fly ash instead of the more common grain and silica used by other manufacturers of fiber cement siding in the Siding.

29.     Fly ash is an industrial by-product of coal burning power plants and costs less than cement, so its use by Defendants lowered the cost of concrete utilized in the manufacture of the Siding.

30.     However, Defendant design to use fly ash in design and/or formulation resulted in water absorption, porosity problems, and other uniform defects alleged herein none of which were inherent in the grain and silica sand design formulations.

31.     Upon information and belief, Defendants learned that the addition of excessive fly ash into its Siding caused water absorption and porosity problems.

32.     As the Siding goes through repeated freeze-thaw cycles, it experiences increased expansion and contraction as a result of excess moisture in the product.

33.     Expansion and contraction of the Siding from the uniform defect leads to the damages, which are alleged herein.

34.     Defendants market the Siding as durable, and as offering long-lasting protection for a specified life of 50 years.

35.     Defendants also represents to the public that its Siding would last for 50 years without problems, or, if it does not last 50 years, then Defendants would remedy the situation.

36.    At all times material hereto, Defendants marketed and represented the Siding that:

- "Combining the appearance and workability of wood with the durability of specially formulated fiber cement, Allura Lap Siding not only looks great but lasts considerably longer than traditional exterior wall cladding or vinyl siding."

- "Unlike wood, vinyl and other traditional building materials, Allura Fiber Cement products resist damage from hail or termite attacks, resist rot, are non-combustible, and free from manufacturing defects. They are also suitable in both hot and cold climates and are fire resistant. What's more, Allura products feature realistic wood grain and textures, come in an incredible array of colors and are paintable for unlimited design possibilities."

- "When it comes to the natural look you want with none of the hassles, Allura Fiber Cement products are all you need. • Durable, engineered to endure harsh weather & high wind climates • Non-combustible, Class A fire rating • Superior aesthetics • Factory Pre-Primed • Distinctive, more realistic textures • Best ROI for homeowners* for 8 years in a row."
- "It won't rot, warp or splinter and is designed to significantly outperform wood in every way."

37.    Plaintiffs' builder or subcontractor as well as Class Member's builders and subcontractors relied on Defendants' representations and purchased the Siding and installed it on Plaintiffs' homes during construction.

38.    As discussed herein, the Siding has not lived up to Defendants' representations and, given the early and severe deterioration that the Siding requires unexpected maintenance and premature repair and replacement.

39.    The Siding prematurely fails, causing damage to the underlying structures and other property of Plaintiffs and members of the Class and lowers the value of the property.

40.    All of Defendants' Siding is uniformly defective such that Plaintiffs and Class members' Siding is failing before the time periods advertised, marketed, and guaranteed by Defendants or otherwise expected by ordinary consumers purchasing siding.

41.    Specifically, Plaintiffs' and Class Members' Siding is cracking, splitting, warping

as well as falling off Plaintiffs' and Class Member's homes.

42.     The defects present in the Siding are so severe that Plaintiffs and Class Members must repair or replace their siding sooner than reasonably expected by ordinary consumers who purchase siding generally and by consumers who purchased the Siding.

43.     As a result of the defects and failures alleged herein, Plaintiffs and the Class have suffered actual damages.

44.     The water intrusion and above-described damages resulting from the Siding constitutes "occurrences" resulting in "property damage" to property other than Defendants' "product" as those are terms commonly defined and used in the typical commercial general liability insurance policy.

45.     The above-described defects are due to fundamental design, engineering and manufacturing errors, which should have been within Defendants' expertise.

46.     Because the Siding cracks, prematurely degrades, otherwise fails and permits water intrusion, it violates the building codes and industry standards.

47.     The above-described deficiencies exist at the time the Siding leaves the factory.

48.     Failure of the Siding begins upon installation and continues during repeated and prolonged exposure to weather and ordinary use.

49.     The Siding on their homes has and will continue to fail prematurely compared to the time expected by ordinary consumers, the time marketed by Defendants, and the time represented by Defendants resulting in and requiring them to expend thousands of dollars to repair the damage associated with the Siding, and to prevent such damage from continuing into their homes and to prevent water intrusion into their home due to defects in the siding.

50.     Defendants knew or reasonably should have known the Siding is defective as

designed and manufactured such that the product fails prematurely due to moisture invasion or other defects.

51.    The outward manifestation of the Siding deterioration and deformation is cracking, warping, discoloration, and product shrinkage.

52.    At the extreme, the Siding breaks and falls off the structure.

53.    In short, the Siding does not perform in accordance with the reasonable expectations of consumers and is not a suitable building product to be installed on houses or buildings.

54.    Upon information and belief, Defendants have received thousands of complaints alleging a manufacturing or design defect in the Siding.

55.    At the time complaints are made, Defendants fail to notify consumers of the defects, and misrepresent that the problems are caused by installation or mishandling during installation.

56.    Despite receiving a litany of complaints from consumers, such as Plaintiffs and other members of the Class, Defendants have refused to fully repair damage caused by the premature failure of its product.

57.    Defendants' response to customers' complaints and other requests for assistance and compensation is woefully inadequate under these circumstances in that it limits Plaintiffs' and Class members' recovery to replacement costs of individual boards of Siding piece by piece and excludes the full costs of labor to replace the Siding.

58.    Defendants' uniform representations to Plaintiff\ and the Class that the Siding defects did not represent a design or manufacturing defect or that the problems were caused by improper installation constitute affirmative misrepresentations of material fact in light of the

known defects inherent in the Siding purchased by Plaintiffs and the Class.

59.    Such representations serve to conceal the true nature of Defendants' defective Siding.

60.    At all relevant times, Defendants had a duty to disclose to Plaintiffs and Class Members that the Siding was defective, prone to foreseeable and uniform problems, such as the problems described herein, and otherwise was inherently flawed in its design such that the Siding was not suitable for use as an exterior building material.

61.    Because the defects in the Siding are latent and not detectable at the time of purchase until manifestation, Plaintiffs and the Class Members were not reasonably able to discover their Siding was defective, despite the exercise of due diligence.

62.    The relatively small size of the typical individual Class Member's claims, and because most homeowners and/or property owners have only modest resources, makes it unlikely that individual Class members could afford to seek a full and fair recovery against Defendants on their own.

63.    This is especially true in light of the size and resources of Defendants, and a class action is, therefore, the only reasonable means by which Class members can obtain relief from these Defendants.

64.    Plaintiffs seek to recover, for herself and for the Class, the costs of repairing the damage to their property and replacing their Siding, and injunctive relief requiring Defendants to replace their defective Siding.

## **PLAINTIFFS' EXPERIENCES**

### ***Martha P. Carbonaro***

65.    In 2014, Plaintiff Carbonaro's home was constructed, and the Siding was installed

on the home.

66.     At the time she purchased the home, Plaintiff believed that her builder had selected and installed good quality, durable fiber cement siding on her home.

67.     Plaintiff believed that her Siding would last for several decades, if not 50-years as represented by Defendants, and that she would not face the cost of repair or replacement within the first four (4) or five (5) years after the Siding was installed.

68.     In the spring and summer of 2018, Plaintiff and her neighbors began noticing that the Siding on the homes were cracking and breaking.

69.     In March of 2018, Plaintiff and her neighbors began contacting the general contractor's warranty department, notifying them of the extensive cracking of the Siding.

70.     The builder initially disregarded Plaintiff's claims due to expiration of the builders' warranty.  However, after repeated follow-up by Plaintiff and her neighbors, the builder put the Defendants on notice of the Siding problems being reported.

71.     Defendants subsequently deployed representatives to inspect the homes and are currently aware of the extensive damage caused by their defective Siding to Plaintiff's home.

72.     Likewise, Defendants have inspected other Class Members homes across the state, and are aware of  the widespread damage cased by their defective Siding.

*__Jameson D. Storm__*

73.     In 2015, Plaintiff Jameson's home was constructed, and the Siding was installed on the home.

74.     At the time he purchased the home, Plaintiff believed that his builder had selected and installed good quality, durable fiber cement siding on his home.

75.     Plaintiff believed that his Siding would last for several decades, if not 50-years as

represented by Defendants, and that he would not face the cost of repair or replacement within the first three (3) or four (4) years after the Siding was installed.

76.     During Plaintiff's first year walkthrough with the builder, he observed cracking in some of the Siding.  The builder's representative stated that this was typical cracking due to settling, and not to worry about this condition.  The builder made repairs to several of the boards. Believing the cracking to be due to settling and that the repair was sufficient, Plaintiff took no further action at that time.

77.     In November or December of 2018, Plaintiff began to notice that more boards had cracked as time passed.  Plaintiff's neighbors also began to notice that their Siding was experiencing widespread cracking.  Plaintiff and his neighbors contacted the builder and discovered that they had Allura fiber cement siding.

78.     Plaintiff estimates that 25% or more of his Siding boards are now cracked.  Below is a representative photograph of the cracking in Plaintiff's Siding:



79.    Plaintiffs continue to experience severe cracking and deterioration of the Siding, and the remedy offered by Defendants for repair is entirely insufficient.

80.    As a result, Plaintiffs had no other alternative than to file suit.

<u>**ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS OR STATUTE OF REPOSE**</u>

81.    Defendants knew or reasonably should have known the Siding was defective prior to the time of sale, and intentionally concealed that material information and the truth concerning their product from Plaintiffs, Class members and the general public, while continually marketing the Siding as dependable products and installing it on Plaintiffs' and Class Members' homes.

82.    Defendants' acts of concealment include failing to disclose that the Siding was

defectively manufactured and would deteriorate in less than its expected lifetime, leading to damage to the very structures they were purchased to protect.

83. Plaintiffs did not discover that the Siding suffers from an inherent defect until shortly before filing this Complaint and after reviewing complaints which had been filed in other jurisdictions.

84. Regardless, all conditions precedent to the prosecution of this action have been satisfied including, without limitation, that this action has been filed less than six (6) years from the date of substantial completion of each home, and/or from the last act of the Defendants, and this suit has been instituted within three years from the date the defect or damage became apparent to Plaintiffs.

85. Indeed, Plaintiffs and Class Members have adequately put Defendants on notice regarding the defects in the Siding, and Defendants have failed and/or refused to adequately remedy the damages.

86. Further, Defendants concealment of the defective nature during the sale of the Siding, and during contact with Plaintiffs and Consumers, along with affirmative misrepresentations that the problems were caused by installation and mishandling, constitutes fraud.

**<u>ESTOPPEL FROM PLEADING LIMITATIONS AND DISCLAIMERS</u>**

87. Defendants are also estopped from relying on any limitations or disclaimers as a defense to Plaintiffs and Class Members' claims.

88. By virtue of Defendants' acts, the Siding installed in Plaintiffs' and Class Members' residences has not lived up to Defendants' marketing, advertising, and representations, and given the defective condition of the Siding and the premature deterioration the Siding that

requires unexpected maintenance, wear and/or replacement, the Siding has not proven to be of the value bargained for and/or of that compared to other siding.

89.     Defendants knew or should have known that their Siding was defective in design and/or manufacture, and said Siding was not fit for their ordinary and intended use, was not merchantable, and failed to perform in accordance with the advertisements, marketing materials and representations disseminated by Defendants or with the reasonable expectations of ordinary consumers such as Plaintiffs and Class Members.

## CLASS ACTION ALLEGATIONS

90.     Plaintiffs bring this class action pursuant to Fed. R. Civ. P., Rule 23 on behalf of themselves and a Class defined as follows:

91.     The Class is defined as follows:

**All persons and entities that own structures within the State of North Carolina in which Defendants' Siding is installed.**

This class excludes:

(a)  any Judge or Magistrate presiding over this action and members of their families;

(b)  any employees of Defendants;

(c)  any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants' and its legal representatives, assigns, and successors;

(d)  any person who has released Defendants or us currently in litigation with Defendants related to Defendants' Siding; and

(e)  all persons who properly execute and file a timely request for exclusion from the Class.

Plaintiffs propose that the Class be divided into subclasses if and as necessary to align class interests.

45.     *Numerosity:* Members of the Class are so numerous that their individual joinder is

impracticable. While the precise number is unknown at this time, upon information and belief, the proposed Class is comprised of a least hundreds of members dispersed throughout the state of North Carolina the joinder of whom in one action is impractical.

46.     Moreover, upon information and belief, the Class is ascertainable and identifiable from Defendants' records and through looking at the Siding.

92.     *Commonality:* The critical question of law and fact common to the Class that will materially advance the litigation is whether the Siding is inherently defective, contrary to the expectations imparted by Defendants through their marketing, representations and omissions.

93.     Furthermore, other questions of law and fact common to the Class that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class include the following:

(a)  Whether the Siding is defective;

(b)  Whether the Siding is subject to cracking and is not suitable for use as an exterior siding product for the duration of time advertised, marketed, and represented;

(c)  Whether the siding will continue to crack and degrade over time;

(d)  Whether Defendants were negligent in their design and manufacture of the Siding;

(e)  Whether Defendants knew or should have known about the defective condition of the Siding;

(f)  Whether Defendants concealed and/or failed to disclose the defective condition of the Siding to consumers;

(g)  Whether Defendants breached their implied warranties;

(h)  Whether the Plaintiffs' are entitled to prejudgment interest, attorneys' fees, and costs from Defendants;

(i)  Whether Defendants' conduct was negligent, reckless, willful, wanton, intentional, fraudulent or the like, entitling Plaintiffs to statutory or punitive damages from Defendants;

(j) Whether Defendants' conduct, acts and omissions constitute a breach of contract, violation of the building code, negligence, negligence *per se*, negligent misrepresentations and/or violation of the North Carolina Unfair and Deceptive Trade Practices Act;

(k) Whether the Siding failed to perform in accordance with the reasonable expectations of ordinary consumers;

(l) Whether Defendants' conduct in marketing and selling its Siding involved misrepresentations, intentional omissions, or was otherwise unfair and deceptive; and

(m) Whether Plaintiffs and the Class are entitled to compensatory damages and the amount of damages for the removal and replacement of the defective Siding.

94.    *Typicality:* Plaintiffs' claims are typical of the claims of the members of the Class, as all such claims arise out of Defendants' conduct in designing, manufacturing, marketing, advertising, representing and selling the defective Siding and Defendants' conduct in concealing the defects in the Siding to owners, contractors, developers, and suppliers.

95.    Furthermore, the factual bases of Defendants' conduct is common to all Class members and represents a common thread of deliberate, fraudulent, and negligent misconduct resulting in injury to all members of the Class.

96.    *Adequate Representation:* Plaintiffs will fairly and adequately protect the interests of the Class members and have no interests antagonistic to those of the Class.

97.    Plaintiffs' have retained counsel experienced in the prosecution of complex class actions and construction defect cases.

98.    *Predominance and Superiority:* This class action is appropriate for certification because questions of law and fact common to the Class members predominate over questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all

members of the Class is impracticable.

99.     Should individual Class Members be required to bring separate actions, this Court and Courts throughout North Carolina would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments.

100.     Moreover, Plaintiffs envision no unusual difficulty in the management of this action as a class action and absent a class action, the vast majority of Class Members likely would not be in a position to litigate their claims individually and would have no effective remedy at law through which to vindicate their claims against Defendants and be made whole.

101.     The above-described defective conditions of the Siding and resultant damages are present in Plaintiffs' homes and are common among Class Members.

102.     As a direct and proximate result of purchasing and installing Defendants' Siding, Plaintiffs and the Class Members have suffered damages, in that the Siding on their homes and other structures has and will continue to fail prematurely, resulting in damage to the Siding and underlying structures and requiring them to expend thousands of dollars to repair the damage associated with the incorporation of the Siding into their homes and other structures, or to prevent such damage from occurring.

## FIRST CAUSE OF ACTION
### (Breach of Implied Warranties)

103.     Plaintiffs reallege and incorporate by reference paragraphs 1-102 of their Complaint as if fully set forth herein.

104.     At all times mentioned herein, Defendants manufactured or supplied the Siding, and prior to the time the Siding was purchased by Plaintiffs' and Class Members' contractors or one of its entities or subcontractors, Defendants impliedly warranted to the builders,

subcontractors, Plaintiffs, Class Members and the general public that the Siding was of merchantable quality and fit for the use for which it was intended.

105.    However, as described herein, the Siding was unfit for its intended use and it was not of merchantable quality, in that it had propensities to break down and fail to perform and protect when put to its normal intended use.

106.    The Siding caused Plaintiffs and Class members to sustain damages as herein alleged.

107.    The Siding was similarly unfit for its particular purpose to be used on Plaintiffs' and Class Members' homes.

108.    Defendants failed to provide an adequate remedy, which independently caused the purported warranty to fail its essential purpose, thereby permitting remedy under implied warranties.

109.    In addition, any attempts to waive or disclaim these warranties were not conspicuous and were otherwise unenforceable.

110.    Defendants have also claimed all of the defects are the result of installation deficiencies.

111.    As a direct and proximate result of the breach of said warranties, Plaintiffs and the Class members suffered and will continue to suffer loss as alleged herein in an amount to be determined at trial.

112.    Plaintiffs and the Class have incurred damages in an amount in excess of $25,000, said amount to be proven at the trial of this action.

## SECOND CAUSE OF ACTION
### Negligent Misrepresentation

113.    Plaintiffs reallege and incorporate by reference paragraphs 1-112 of their

18

Complaint as if fully set forth herein.

114.     Defendants, through their marketing. materials, website, brochures, product literature, advertisements, distributors, and agents, made representations to the Plaintiffs and Class Members, builders, suppliers and the public about the superior quality and durability of their Siding and components.

115.     Defendants transmitted said representations to the Plaintiffs and Class Members, builders, suppliers and the public while failing to disclose the defective condition of their Siding, including the substantial leakage and consequential damages that would or could likely result from their Siding' defects.

116.     Defendants have a pecuniary interest in making these representations and non-disclosures and had a duty to communicate truthful information to the Plaintiffs and Class Members, builders, suppliers and the public.

117.     Defendants breached their duties by failing to exercise due care in making the above-described representations and non-disclosures and the Plaintiffs and Class Members, builders, suppliers and the public relied on these representations and non-disclosures.

118.     The Plaintiffs and Class Members have suffered a pecuniary loss as a direct and proximate result of their reliance upon these representations and non-disclosures.

### THIRD CAUSE OF ACTION
**(Negligence)**

119.     Plaintiffs reallege and incorporate by reference paragraphs 1-118 of their Complaint as if fully set forth herein.

120.     Defendants had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, and marketing of the Siding.

121.     Defendants breached their duty to Plaintiffs and the Class by designing,

manufacturing, advertising and selling a product that is defective and will fail prematurely, and by failing to promptly remove the Siding from the marketplace or to take other appropriate remedial action.

122.    Defendants knew or should have known that the Siding was defective, would fail prematurely, was not suitable for use as an exterior siding product, and otherwise was not as represented by Defendants.

123.    As a direct and proximate cause of Defendants' negligence, Plaintiffs and the Class have suffered actual damages in that the Siding was purchased by an agent of Plaintiffs or the Class Members and installed on Plaintiffs' and Class Members' homes.

124.    Upon information and belief, the defect in the Siding causes damage to Plaintiffs' and Class members' existing homes in addition to damage to the siding itself, by allowing moisture to enter through the Siding.

125.    These failures have caused and will continue to cause Plaintiffs and the Class Members to incur expenses repairing or replacing their siding as well as the resultant progressive property damage.

126.    Plaintiffs and the Class have incurred damages in an amount in excess of $25,000, said amount to be proven at the trial of this action.

## FOURTH CAUSE OF ACTION
### (Violation of Unfair Trade Practices and Consumer Protection Laws)

127.    Plaintiffs reallege and incorporate by reference paragraphs 1-126 of their Complaint as if fully set forth herein.

128.    N.C. Gen. Stat. § 75-1.1 makes unlawful, "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."

129.    By selling the Siding throughout the State of North Carolina and making

20

representations regarding its product, Defendants have affected commerce and trade within the State. CertainTeed engaged in unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1 when, in selling and advertising the Siding, Defendants failed to give Plaintiffs and members of the Class adequate warnings and notices regarding the defect in the Siding despite the fact that they knew or should have known of the defects described herein.

130.    Thus, Defendants knew of the defective nature of the Siding yet continued to sell and distribute the Siding.

131.    Defendants' acts and omissions possessed the tendency or capacity to mislead or create the likelihood of deception.

132.    Defendants knew or should have known that its Siding was defective, would fail prematurely, was not suitable for use as an exterior Siding product, and otherwise was not as represented by Defendants.

133.    Defendants' conduct and omissions described herein repeatedly occurred in their trade or business and were capable of deceiving a substantial portion of the consuming public.

134.    Defendants' misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiffs and other members of the Class to be deceived about the suitability of the Siding for use as a long-lasting exterior borne building product that would last at least 50 years.

135.    Defendants intended that Plaintiff, Class members and or their agents and subcontractors and contractors would rely on their misrepresentations, concealment, deceptions, and/or omissions regarding the suitability, durability, and useful life of its defective Siding.

136.    The facts concealed or not disclosed by Defendants are material facts in that Plaintiffs and any reasonable consumer would have considered those facts important in deciding

whether to purchase the Siding or purchase homes or structures constructed with the Siding.

137.    Had Plaintiffs and the Class known the Siding was defective and would fail prematurely they would not have purchased the Siding or they would have negotiated a lower price to reflect the risk, or simply avoided the risk altogether by purchasing different siding.

138.    Defendants unlawful conduct is continuing, with no indication that it will cease.

139.    As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiffs and the members of the Classes have been damaged in an amount in excess of $25,000 and are entitled pursuant to N.C. Gen. Stat. § 75-16 to recover treble damages as well as attorneys' fees and costs.

WHEREFORE, Plaintiffs pray that this Court will certify a class and for judgment against Defendants, for:

1.    For an order certifying the Class, pursuant to Fed. R. Civ. P., Rule 23, appointing Plaintiffs as representative of the Class, and appointing the law firms representing Plaintiffs as counsel for the Class;

2.    Declare that Defendants are financially responsible for notifying all Class members of the problems with the Siding;

3.    Enter an award of attorneys' fees and costs, as allowed by statute and law;

4.    Enter an award of pre-judgment and post-judgment interest, as provided by statute and law;

5.    Enter an award for compensatory damages sustained by Plaintiffs and Class;

6.    Enter and order for payment of costs of suit herein incurred;

7.    Enter an award of treble damages for its unfair and deceptive trade practices as provided in N.C.Gen.Stat. § 75-16;

8.    Grant Plaintiffs and the Class leave to amend the Complaint to conform to the evidence produced at trial; and

9.    Grant such other or further relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.

This 18th day of January 2019.

WHITFIELD BRYSON & MASON LLP

/s/ Scott C. Harris
Daniel K. Bryson
N.C. State Bar No. 15781
Scott C. Harris
N.C. State Bar No. 35328
Harper T. Segui*
900 W Morgan St
Raleigh, NC  27603
Phone: (919) 600-5000
Fax: (919) 600-5035
scott@wbmllp.com
dan@wbmllp.com
harper@wbmllp.com

*To be admitted pro hac vice

Counsel for Plaintiffs and the Proposed Class